LENA GILFONE, APPELLANT, v. STATE OF NEW JERSEY, DEPARTMENT OF HUMAN SERVICES, DIVISION OF MEDICAL ASSISTANCE AND HEALTH SERVICES, RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued December 19, 1978—Decided January 19, 1979.

---

[2]Our conclusion that there had been no prior *R.* 3:4–2 hearing here is reinforced by the fact that at this arraignment bail was fixed for the first time.

Before Judges MATTHEWS, KOLE and MILMED.

*Ms. Sandra Y. Dick* argued the cause for appellant (Essex-Newark Legal Services, *Mr. Timothy Weeks,* Executive Director, attorney; *Ms. Dick and Mr. Armin Freifeld,* on the brief).

*Mr. Robert J. Haney,* Deputy Attorney General, argued the cause for respondents (*Mr. John J. Degnan,* Attorney General of New Jersey, attorney; *Mr. Stephen L. Skillman,* Assistant Attorney General, of counsel; *Mr. Haney* on the brief).

PER CURIAM. Appellant Lena Gilfone, a Medicaid recipient who has been a patient at the Essex County Geriatrics Center, a nursing home, since 1971, appeals from a final decision of the Division of Medical Assistance and Health Services (Division) holding the Division entitled to recover the lump sum Socal Security check for $1,886.80 which she received as her widow's benefits for the 16–month period, June 1974 through September 1975.

The essential facts are not in dispute. Relying on the opinion of the Supreme Court of the United States in *Philpott v. Essex Cty. Welfare Bd.*, 409 *U. S.* 413, 93 *S. Ct.* 590, 34 *L. Ed.* 2d 608 (1973)[1], representatives of the Essex County Welfare Board, apparently in accord with the request of Mrs. Gilfone's daughter, recommended that the proceeds of the Social Security check be set aside and held for Mrs. Gilfone's burial expenses. The Chief of the Bureau of Claims and Accounts in the Division was of an opposite opinion, maintaining that

Although this is not considered as unexpended personal incidental funds in excess of $100.00, it is my opinion that this money is income which must be applied towards the patient's cost of stay while under the Medicaid Program. I do not feel that this can be treated as resources available at the time of determining eligibility, which incidentally can not exceed $1,500.00[2] in cash, nor do I feel it can be set aside for the patient's burial expenses.

[1]The Social Security Act, in § 407 (42 *U. S. C. A.* § 407), provides:

The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

In his opinion for the Court in *Philpott* Justice Douglas pointed out that

* * * § 407 does not refer to any "claim of creditors"; it imposes a broad bar against the use of any legal process to reach all social security benefits. That is broad enough to include all claimants, including a State. [409 *U. S.* 416–417, 93 *S. Ct.* 592, 34 *L. Ed.* 2d 611–612]

[2]*N. J. A. C.* 10:94–4.42 provides:

The resource maximum of $1,500 applies to individuals in long-term care facilities. Countable resources held in the institution (for example, trust funds, personal needs accounts) and/or elsewhere are to be applied toward the resource maximum. If the $1,500 resource maximum is exceeded, Medicaid eligibility will cease or the amount of such excess applied toward reimbursement. In the event of such reimbursement, Medicaid eligibility shall con-

Following the fair hearing in the Division requested by Mrs. Gilfone's daughter, the hearing officer filed his report in which he stated, among other things, that he "does not consider the *Philpott* decision to be applicable to this case." He reasoned:

First, in *Philpott*, the recipient was living in the community, not in an institutional setting such as Lena Gilfone. Second, the Welfare Board was prevented from recovering the money because the filing of the Agreement to Reimburse placed them in a creditor status. Once the Welfare Board achieved creditor status, they had the same limitations placed on them as other creditors.

He concluded that

Since the Commissioner (of Human Services) is required to do all things necessary to secure maximum Federal participation (New Jersey Statutes Annotated, *N. J. S. A.* 30:4D–7), the Hearing Officer considers the Federal law and regulations to require the State to collect all income over the PIE [personal incidental expense] allowance [of $25 per month] and apply it to the cost of nursing home care. To rule otherwise would be contrary to the Hearing Officer's understanding of the law as it applies to Title XIX.

And, he affirmed "the decision of the Division of Medical Assistance and Health Services to recover Lena Gilfone's social security check." The Acting Director of the Division agreed "with the Findings of Fact and Conclusions and Recommendations contained in the Hearing Officer's Report," and adopted the report in full. This appeal followed.

We reverse. We find no sound basis for the Division's decision. *Philpott* is dispositive of the dominant issue raised on this appeal, *viz.*, whether the State is, in the circumstances, entitled to Mrs. Gilfone's lump sum Social Security check. It is clear that the broad bar imposed by 42 *U. S. C. A.* § 407 "against the use of any legal process to reach all social

tinue so long as all other eligibility criteria are met. The benefits of continued Medicaid eligibility shall be explained to the patient and/or next of kin in such situations.

security benefits * * * is broad enough to include all claimants, including [as here] a State." It follows that Mrs. Gilfone and not the Division is entitled to the proceeds of the check. Accordingly, the Division is to make delivery of these funds to her forthwith.

As we previously noted, there is a resource maximum of $1,500 applicable "to individuals in long-term care facilities." *N. J. A. C.* 10:94–4.42. We also note that participation in the Medicaid program must be "denied or terminated if the total value of an individual's countable resources * * * exceeds $1,500." *N. J. A. C.* 10:94–4.19. Accordingly, whatever funds remain from the proceeds of Mrs. Gilfone's lump sum Social Security check, after she pays her bills for the month in which the money is paid to her, will become a "resource." If her total assets then exceed $1,500, she will, while in that posture, either become ineligible for continued Medicaid assistance or apply the excess to the cost of her medical care.

The final agency decision under review is reversed and the matter is remanded to the Division of Medical Assistance and Health Services for further proceedings consistent with this opinion.